MARTEL D. WASHINGTON, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 384, 2009.
Supreme Court of Delaware.
Submitted: March 10, 2010.
Decided: June 8, 2010.
Revised: June 8, 2010
Jan A.T. van Amerongen, Jr., Esquire, Jan A.T. van Amerongen LLC, Wilmington, Delaware, for Appellant.
Susan Dwyer Riley, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.
BERGER, Justice, for the majority:
In this criminal appeal we consider whether the trial court should have granted appellant's motion for judgment of acquittal based on conflicts in the State's evidence. In most cases, inconsistencies in the evidence are resolved by the jury. Here, however, the State's two relevant witnesses gave irreconcilably different accounts of material facts. Most significantly, the victim testified that two men pulled her into an alley and robbed her at gunpoint. One of the assailants, who was the State's only witness against appellant, testified that three men participated in the robbery and that they all were present in the alley, standing within three feet of the victim. Where the victim flatly denies that a defendant was present, and there is no corroboration for the accomplice's contrary testimony, a motion for judgment of acquittal should have been granted. Accordingly, we reverse.

Factual and Procedural Background
Shortly before 9:30 p.m., on October 1, 2007, A.T.,[1] a 17 year-old high school student, was walking to her home in Wilmington. A.T. and her cousin were crossing the Market Street Bridge, when she noticed three men walking in the same direction, but on the opposite side of the bridge. After crossing the bridge, A.T. left her cousin and turned onto 18th street. She was talking with a friend on her cell phone when two men, holding guns, ran up behind her and ordered A.T. into an alley. At that point, A.T. saw the third man walking across the street. She never saw him again and could not identify him, either from photographs or at trial.
According to A.T., one of the two men was wearing a blue hat and the other was wearing a black hat. The man in the blue hat later was identified as Jaron Smullen and the man in the black hat was identified as Marvin Burroughs. A.T. testified that Burroughs ordered her to lie down on her back. Burroughs demanded money, but A.T. said she had none. Burroughs patted her down, told her to lie on her stomach, patted her down again, and then ordered her to strip. A.T. complied, and Burroughs then ordered her to lie back down. Burroughs picked up her clothes and then ordered A.T. to lie on her stomach. At that point, A.T. heard Burroughs ask Smullen, "Should I do it, should I do her?" A.T. saw from Smullen's shadow that he shook his head, no. Burroughs then ordered A.T. to walk about 10 feet and stand under a street lamp so that he could see her better. After a few minutes in the lighted area, Burroughs told A.T. to lie on her stomach. He warned her not to move, or he would kill her, and then he and Smullen left, taking A.T.'s clothes and cell phone with them. A.T. started walking home, and a car with some of her friends passed by. The friends gave A.T. clothes and brought her to her aunt's house.
When the police interviewed A.T. later that evening, she told them that she knew the man in the blue hat from high school. The next day, Detective Matthew Hall returned to A.T.'s house, and she identified Smullen from a high school yearbook. The police located Smullen and interviewed him. Smullen identified Burroughs and Washington. Smullen also confessed and gave a statement to the police. Under a plea bargain, Smullen pled guilty to second degree robbery and second degree conspiracy. He agreed to testify truthfully at his co-defendants' trial and the State agreed to seek a sentence of no more than one year at Level V.
Smullen's testimony at trial conflicted with his prior statement to the police and with A.T.'s testimony. On direct examination at trial, he said he was coming from a pickup basketball game and saw Burroughs and Washington by the Market Street Bridge. Burroughs said, "We going to get these two dudes that was walking across the bridge."[2] In response, Smullen said okay and Washington said nothing. After the two potential robbery victims turned the corner and disappeared, the three men changed their focus to A.T. Smullen testified that he recognized A.T. while on the bridge, but that he only told Washington that he knew her.
Smullen said that, when they went into the alley, he was two feet away from A.T., and that Washington was even closer to the victim  about one foot away  on the other side. Both he and Washington were keeping lookout. Smullen said that he did not have a gun, but he saw that Washington had a gun on his waist. When Burroughs asked if he should shoot A.T., Smullen testified that he "jumped in the way" and said, "No, we not going to shoot her."[3] Then all three of the men walked away together.
On cross-examination, Smullen denied that A.T. had been ordered to stand up and walk under the light. When asked, "Weren't you standing there?" he answered, "Not that close . . . I was like 2 feet away." Pushed further, Smullen explained that he wears glasses and did not have them on. He did not have his glasses on at trial, either, but was able to see the court reporter sitting a few feet away from him. Smullen also acknowledged differences between his taped statement and his trial testimony. For example, in his statement, Smullen did not say that Washington had a gun; he said that A.T. had no money; and he claimed to be farther away from A.T. during the robbery. He agreed that, when he gave his taped statement, he did not know A.T.'s version of events.
Washington and Burroughs were tried together, and most of the focus was on Burroughs' identity. Smullen and A.T. agreed that Burroughs was the one giving the orders, but she had difficulty identifying him from photographic lineups, and was unable to identify him in court. At the close of the State's case, Washington moved for judgment of acquittal. The trial court denied that motion, as well as a renewed motion for judgment of acquittal or a new trial. Washington was convicted of first degree robbery and second degree conspiracy. The jury acquitted him on the charge of possessing a firearm during the commission of a felony. This appeal followed.

Discussion
The jury's function is to decide whether the evidence presented at trial proves, beyond a reasonable doubt, that the defendant committed the charged crimes. "[I]t is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts."[4] The jury has "discretion to accept one portion of a witness' testimony and reject another part."[5] But, in the rare case where there is an irreconcilable conflict in the State's evidence concerning the defendant's guilt, such as would preclude a conviction beyond a reasonable doubt, the trial court must remove the case from the jury's consideration and grant a motion for judgment of acquittal.
This Court found such a conflict in Bland v. State.[6] Four defendants had been charged with burglary and conspiracy after the victims discovered that their home had been burglarized while they were on vacation. Two of the defendants entered into plea bargains, and presented the only evidence against the remaining two defendants. The accomplices agreed that: 1) they were together in a car; 2) they stopped and took mail from the victims' mailbox; 3) then they drove around for a while; and 4) when they returned, two men stayed in the car while the others broke into the house.
But the accomplices' stories differed in several respects. For example, one said that there were four burglars; the other agreed there were four on direct examination, but on cross-examination changed his testimony and said there were six. One said that, after taking the mail, and learning the name of the homeowner, they called the house to make sure no one was home. The other said that they made no telephone call. One said that the car remained parked at the corner during the burglary. The other said that he was instructed to drive around for a while and then return, and also said that during the burglary, he took one of the two defendants home at the defendant's request.
The Bland court first discussed Delaware law on corroboration of an accomplice's testimony. The Court noted that other jurisdictions require corroboration from an independent source. In Delaware, however, corroboration is not "an absolute necessity."[7] The Court declined to change the Delaware rule, noting that it "has been followed repeatedly for many years and [is] too deeply embedded in the law of this state to permit our changing it by judicial action."[8] The Court continued:
But our rule does not mean that a trial Judge has no power to remove the case from the jury's consideration in a situation where, for example, there is an irreconcilable conflict in the State's case concerning the defendant's guilt. On occasion, it may well be the duty of the trial Judge to declare the evidence to be insufficient to warrant conviction. The present appellants contend that this was such a case. We agree.[9]
The principle announced in Bland has been reaffirmed numerous times over the past 40 years.[10] None of the fact patterns in those post-Bland cases, however, created an irreconcilable conflict. That is because only in a rare case, like this one, will all of the requirements for an irreconcilable conflict be found. First, the conflict must be in the State's evidence. The fact that defense witnesses present evidence inconsistent with the State's witnesses is irrelevant. Second, the only evidence of the defendant's guilt must be the uncorroborated testimony of one or more accomplices. Finally, the inconsistencies must be material to a finding of guilt.
In analyzing the evidence against Washington, we begin with the fundamental inconsistency as to the number of participants in the crime. Smullen said there were three people, standing within a few feet of the victim in an alley. A.T. said there were only two. She was unwavering in her testimony that, as the two men ran up to her, the third person, who had been walking on the bridge before the attack, was walking across the street. The presence and use of guns was another significant inconsistency. Smullen testified that he had no gun; that Burroughs was pointing his gun at A.T.; and that Washington had a gun in his waist. A.T. testified that Smullen and Burroughs both were pointing guns at her. There were other material inconsistencies. For example. Smullen said that, when Burroughs asked whether he should shoot A.T., Smullen jumped in the way and said no. A.T. said that Smullen merely shook his head. Finally, Smullen testified that he did not see A.T. standing nude, under the street light, a few feet away from him.
But for Smullen's testimony, the State would have had no evidence against Washington. In closing, the State made it appear that there was independent support for Smullen's account of the crime. For example, while listing the consistencies between A.T.'s testimony and Smullen's, the prosecutor said, "They both stated that [A.T.] was on the ground when the three men fled the scene . . . ."[11] In rebuttal, the prosecutor again made it seem that there was corroboration for Smullen's testimony. He said that "everybody agrees . . . that . . . three men approached A.T. . . . ."[12] In fact, A.T. denied that there was a third person present, in the alley, during the robbery. This Court recently reaffirmed Bland, noting the "inherent weakness in accomplice testimony."[13] Smullen's testimony not only was uncorroborated, but also was contradicted by the victim. In almost all other circumstances, it would be the jury's task to sort out the conflicts in the evidence, and to decide whether to accept or reject all or a portion of the witnesses' testimony. Here, however, we conclude that the irreconcilable conflicts in the State's evidence precluded any rational jury from reaching a harmonious version of the facts that would support a finding of guilt beyond a reasonable doubt.
We recognize the dissent's concern about removing factual determinations from the jury. The dissent proposes that we adopt the Missouri doctrine of "destructive contradictions," as set forth in State v. Newberry.[14] We decline to do so, although we find that Smullen's testimony was so inherently incredible that it would meet even that standard.

Conclusion
Based on the foregoing, the judgment of the Superior Court is REVERSED and this matter is REMANDED for further action in accordance with this opinion. Jurisdiction is not retained.
RIDGELY, Justice, dissenting:
I respectfully dissent. Under Superior Court Criminal Rule 29 (a)[15] there is only one ground for the entry of a judgment of acquittal, namely that "the evidence is insufficient to sustain a conviction."[16] Smullen testified at trial that he conspired with Washington and Burroughs to rob A.T. Smullen explained that Washington was acting as a look-out during the robbery. Specifically, Washington was "[o]n the other side, make sure nobody was coming." A.T. acknowledged the presence of a third man on the bridge. No juror was required to accept as accurate her belief that only two men were in the alley. According to Smullen, the third man was Washington who was acting as the look-out. "When a defendant challenges the sufficiency of the evidence to support a conviction, we review the evidence to determine whether a rational trier of fact, considering the evidence in the light most favorable to the prosecution, could find the essential elements of the offense beyond a reasonable doubt."[17] Smullen's testimony satisfies this test. A rational trier of fact could conclude that Washington was both a co-conspirator and an accomplice to the robbery.[18]
The Majority holds that an "irreconcilable conflict" requiring a judgment of acquittal arises where: I) there is a conflict in the State's evidence; ii) the only evidence of the defendant's guilt is the uncorroborated testimony of one or more accomplices; and iii) the inconsistencies are material to a finding of guilt. Applying this test will take from the jury cases that are well within the jury's capability to decide without speculation.
The necessary predicate of an irreconcilable conflict that requires a judgment of acquittal as a matter of law due to inconsistencies is so rare that one state has defined it under the doctrine of "destructive contradictions."[19] According to the Missouri Supreme Court, "when the state's evidence is inherently incredible, self-destructive or opposed to known physical facts it will not be sufficient to permit a jury to find the defendant guilty beyond a reasonable doubt."[20] This doctrine is very limited. A defendant is not entitled to an acquittal simply because the testimony, even of accomplices, is conflicting. As the Missouri Supreme Court explained:
A defendant is not entitled to a judgment of acquittal because of discrepancies or conflicts in the testimony of the state's witnesses. Conflicts in the evidence, the determination of the credibility of the witnesses and the weight to be given their testimony are within the peculiar province of the jury. The fact that a witness' testimony may to some extent be contradictory does not prevent its constituting substantial evidence. Inconsistencies in testimony are questions for jury resolution. The testimony of a single witness may be considered sufficient although the testimony may be inconsistent.[21]
I find Missouri's articulation of this doctrine persuasive, useful, and consistent with the purpose of the irreconcilable conflict rule in Bland. Only when the "testimony is so inherently incredible, self-destructive or opposed to known physical facts on a vital point or element" should the case be removed from the capable hands of the jury. The doctrine does not apply to inconsistencies between the testimony of one witness and another witness at trial.[22] Resolution of such a conflict is for the jury to resolve.
"It has long been our law that the jury is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony."[23] The conflicts in this case were reconcilable by deciding whether Smullen was credible.[24] The Superior Court correctly recognized that if the jury believed Smullen, it could find Washington guilty beyond a reasonable doubt. By viewing the evidence in the light most favorable to the State, as our law requires when considering a motion for judgment of acquittal, the Superior Court did not err when it denied Washington's motion. Here, the State's evidence was not inherently incredible, self-destructive or opposed to known physical facts. Accordingly, the doctrine of "destructive contradictions" would not apply. Because a rational trier of fact could find Washington guilty as an accomplice based upon Smullen's testimony, I would affirm the judgment of the Superior Court.
NOTES
[1] We refer to the victim as A.T. to protect her identity.
[2] Tr. 5/14 at 187.
[3] Tr. 5/14 at 198.
[4] Poon v. State, 880 A.2d 236, 238 (Del. 2005).
[5] Pryor v. State, 453 A.2d 98, 100 (Del. 1982).
[6] 263 A.2d 286, 288 (Del. 1970).
[7] 263 A.2d at 288.
[8] Ibid.
[9] Ibid.
[10] See, e.g.,: Corbin v. State, 1991 WL 316965 (Del. Supr.); Ward v. State, 1991 WL 181476 (Del. Supr.); Brokenbrough v. State, 522 A.2d 851 (Del. 1987); Wintjen v. State, 398 A.2d 780 (Del. 1979); Wilson v. State, 305 A.2d 312 (Del. 1973).
[11] Tr. 5/16 at 22.
[12] Id. at 59.
[13] Smith v. State, 2010 WL 1224887 at *7 (Del. Supr.)
[14] 605 S.W.2d 117 (Mo. 1980).
[15] The Court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses...."
[16] Super. Ct Crim. R. 29(a); United States v. Cohen, 301 F.3d 152, 159 (3rd Cir. 2002); Wright & Henning, 2A Fed. Prac. & Proc. Crim. §466 (4th Ed 2009).
[17] Poon v. State, 880 A.2d 236, 238 (Del. 2005); Seward v. State, 723 A.2d 365 (Del. 1999); Monroe v. State, 652 A.2d 560, 563 (Del. 1995); Robertson v. State, 596, A.2d 1345, 1355 (Del. 1991).
[18] See 11 Del. C. § 271.
[19] State v. Newberry, 605 S.W.2d 117, 121 (Mo. 1980).
[20] Id.
[21] Id. (citations omitted). Nor do all inconsistencies in testimony rise to the level of "destructive contradictions." See State v. McGee, 284 S.W.3d (Mo. Ct. App. 2009). The doctrine has no application "to contradictions between the victim's trial testimony and prior out-of-court statements, to contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive." State v. Paulson, 220 S.W.3d 828, 833 (Mo. Ct. App. 2007) (quoting State v. Cole, 148 S.W.3d 896, 902 (Mo. Ct. App 2004)). The doctrine does not apply to inconsistencies between the testimony of one witness and another witness at trial. See State v. Johnson, 182 S.W.3d 667, 672 (Mo. Ct. App. 2005) (citing State v. Case, 140 S.W.3d 80, 92 (Mo. Ct. App. 2004)). The doctrine is applicable when a witness' testimony is "marred by rampant inconsistencies and contradictions." State v. Case, 140 S.W.3d at 92.
[22] State v. Johnson, 182 S.W.3d at 672.
[23] Tyre v. State, 412 A.2d 326, 330 (Del. 1980) (emphasis added) (citing State v. Matushefske, 215 A.2d 443, 448-49 (Del. 1965); State v. Adams, 65 A. 510, 512 (Del. Ct. O. & T. 1906)).
[24] Compare Ward v. State. (1991 WL 181476 (Del. Sept. 9, 1991)). In Ward an accomplice to a robbery confessed to the police following her arrest, thereby implicating her two co-conspirators. At trial, the accomplice recanted her confession and denied any knowledge of the relevant events. In upholding the convictions of the two co-conspirators, we held:

[t]he jury could reasonably have found that Sims' in-court testimony was false and her prior out-of-court testimony was, in fact, the truth. With proper cautionary instructions, a jury may ground a guilty verdict solely on the testimony of an accomplice, even if such testimony is not corroborated. (Id., at *2).