# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | **ID No. 1703001172** |
| | ) | **Cr. A. Nos. IN17-03-0408, etc.** |
| KASHIEM THOMAS, | ) | |
| Defendant. | ) | |

Submitted: December 21, 2018
Decided: February 8, 2019
Written Decision Issued: February 18, 2019

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

This 18th day of February, 2019, having considered Defendant Kashiem Thomas's Motion for Judgment of Acquittal (D.I. 67); the State's Response thereto (D.I. 68); the parties' supplemental filings (D.I. 79; D.I. 82); the parties' oral arguments; and the record in this matter; it appears to the Court that:

(1) Defendant Kashiem Thomas was arrested for multiple charges stemming from the shooting death of Keevan Hale in Wilmington, Delaware.[1]

(2) After a six-day jury trial, Thomas was found guilty of Murder in the First Degree and Possession of a Firearm During the Commission of a Felony ("PFDCF").[2] But before the matter was submitted to the jury, Thomas had moved

---

[1] Adult Complaint and Warrant, *State v. Thomas*, ID No. 1703001172 (Del. J.P. Ct. Mar. 2, 2017) (D.I. 1).

[2] Verdict Form, *State v. Thomas*, ID No. 1703001172 (Del. Super. Ct. May 1, 2018) (D.I. 62). The State has entered a *nolle prosequi* as to a third indicted offense—possession of a firearm

- 1 -

unsuccessfully for a judgment of acquittal.[3] He argued then that "there has literally been no evidence provided in any part of the State's case" that he shot and killed Keevan Hale.[4] Now before the Court is Thomas's renewed motion seeking to have the Court toss the jury's verdict, adopt his peculiar view of the evidence, and enter judgments of acquittal on his two convictions.[5]

(3)     Thomas has always challenged just one element essential to his two convictions: identity.[6] Put simply, Thomas says the State failed to prove beyond a reasonable doubt that it was he who fatally shot and killed Keevan Hale.

---

by a person prohibited (IN17-03-1728)—which had been severed by agreement for trial by the Court without a jury. *See* D.I. 53.

[3]     Super. Ct. Crim. R. 29(a) ("*Motion before submission to jury.* -- . . . The court on motion of a defendant . . . shall order the entry of judgment of acquittal of one or more offenses charged in the indictment . . . after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.").

[4]     Apr. 30, 2018 Mot. for Judg. of Acquittal Tr. at 3 (D.I. 83).

[5]     Super. Ct. Crim. R. 29(c) ("*Motion after discharge of jury.* -- If the jury returns a verdict of guilty . . . a motion for judgment of acquittal may be . . . renewed . . . [and] the court may on such motion set aside the verdict and enter judgment of acquittal.").

[6]     Apr. 30, 2018 Mot. for Judg. of Acquittal Tr. at 7 (D.I. 83):

| | |
|---|---|
| **Court:** | So in sum, your motion for judgment of acquittal is that the State has not met the element of identifying your client appropriately? |
| **Defense Counsel:** | Exactly. |

May 1, 2018 Def. Closing Arg. Tr., at 3-32 (D.I. 86) (Thomas's closing argument contesting only the element of identity); Def.'s Mot. for Judg. of Acquittal, *State v. Thomas*, ID No. 1703001172 (Del. Super. Ct. May 7, 2018) (D.I. 67) (Thomas's one-page post-trial motion asking only "that arguments which were made on the record at th[e] time [of the mid-trial Rule 29(a) motion]" and the defense's "closing arguments on the record before the jury . . . be considered in support of this [Rule 29(c)] motion" and incorporating the transcripts of those arguments); Def.'s Supp. Mem. on

(4)     The State counters that the evidence presented at trial, both direct and circumstantial, when viewed in the light most favorable to its case, was sufficient to allow a reasonable jury to convict Thomas of intentional murder and its related firearms charge.[7]

(5)     The Court here briefly recounts just some of the evidence relevant to this motion.  On February 23, 2017, at approximately 8 p.m., gunfire erupted on the 600 block of East 23rd Street of Wilmington.  When the dust settled, two men were down.  Keevan Hale had been struck multiple times and collapsed inside his residence at 602 East 23rd Street.  The weapon used to shoot and kill Mr. Hale fired .410 shot shells.  Kashiem Thomas was felled on the front sidewalk just outside Mr. Hales's home.  He had been struck in the right rear flank by a .40 caliber handgun that Mr. Hale fired back at him.  Thomas could not get to his feet, despite efforts to do so, and remained incapacitated on the sidewalk.

(6)     Police arrived quickly to a bevy of onlookers, intermeddlers, and various members of both the Hale and Thomas families.  The first responding officer tried to render aid to Thomas, but he was met with resistance from both Thomas and

---

Mot. for Judg. of Acquittal., *State v. Thomas*, ID No. 1703001172 (Del. Super. Ct. Nov. 19, 2018) (D.I. 79) (summarizing certain trial evidence and again citing just Thomas's mid-trial Rule 29(a) and closing arguments, which each contested only the element of identity, as support).

[7]     State's Resp. to Def.'s Mot. for Judg. of Acquittal, *State v. Thomas*, ID No. 1703001172 (Del. Super. Ct. May 14, 2018) (D.I. 68); State's Supp. Resp. to Def.'s Mot. for Judg. of Acquittal, *State v. Thomas*, ID No. 1703001172 (Del. Super. Ct. Dec. 21, 2018) (D.I. 82).

an unknown man who forbade Thomas from talking to any police officer. While Mr. Hale lay *in extremis* on his living room floor, he confirmed for the police that it was the man outside on the sidewalk, *i.e.*, Thomas, who had shot him.

(7)     Thomas and Mr. Hale were each taken to the hospital. Thomas was treated and eventually recovered from his single injury. Mr. Hale died that evening from his multiple gunshot wounds.

(8)     The police found .40 caliber spent shell casings and wadding from .410 shot shells strewn on the grass in front of 602 East 23rd Street and near its front porch area. Mr. Hale's .40 caliber handgun was found tucked in the armrest of the living room couch near where he collapsed. Mr. Hale's mother first located the pistol on her front porch; his sister hid it in the couch before the police arrived. The firearm that discharged the wadding and multiple shot shell projectiles that killed Mr. Hale was never found.

(9)     Surveillance footage from the corner store between Thomas's and Mr. Hale's homes was admitted at trial. It showed Thomas in and around the store and its environs at various points during the fifteen-minute period before the shooting. At all times then, he was clad all in black with his face fully visible. But as Thomas made his last pass of the store's outside camera heading down 23rd Street towards Mr. Hale's house in the few seconds before the shooting, he had a ski mask covering all but his eyes, his hood pulled up, and his right hand in his jacket pocket.

(10)   A witness who had just left Mr. Hale's company, confirmed that Thomas was the only person he saw on that block of 23rd Street when Mr. Hale was shot. The sum of that witness's trial testimony and pre-trial statements made it clear that Thomas—whom the witness had just passed on the street and whom the witness saw trying to get up from the sidewalk just after the exchange of gun fire—was the person who shot and killed Mr. Hale.

(11)   Forensic Shot Spotter evidence demonstrated that all of the fatal shots were fired first; and, that those fatal shots were fired from the Hales's front sidewalk and yard.

(12)   Forensic testing also identified gunshot residue on Thomas's hand.

(13)   A convicted criminal defendant must clear a high bar to prevail on a motion for judgment of acquittal.[8] The Court may enter a judgment of acquittal only

---

[8]     *See generally Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (explaining that the inquiry on review of a motion claiming insufficiency of the evidence . . .

> does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the

if "the evidence is insufficient to sustain a conviction."[9] On such motion, the Court considers the evidence, "together with all legitimate inferences therefrom . . . from the point of view most favorable to the State."[10] The Court must be mindful that the jury, not the judge, is the factfinder, and it is "[t]he jury's function is to decide whether the evidence presented at trial proves, beyond a reasonable doubt, that the defendant committed the charged crimes."[11] And so, the standard of review a trial judge employs on a motion for judgment of acquittal is "'whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the

---

fundamental protection of due process of law. (citations omitted) (emphasis in original)).

*See also Williams v. State*, 539 A.2d 164, 166-69 (Del. 1988) (discussing the development of Delaware's sufficiency-of-evidence standard and adoption of *Jackson* standard), *cert. denied*, 488 U.S. 969 (1988) ; *see also Vincent v. State,* 996 A.2d 777, 779 (Del. 2010) (instructing that under this standard: "Although we might not independently have found this evidence sufficient at trial, that question does not arise here. Rather, the test is whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (citations omitted)(emphasis in original). This is sufficiency-of-evidence standard this Court has long and consistently applied under its Criminal Rule 29(c). *See State v. Travis*, 1992 WL 147996 (Del. Super. Ct. June 9, 1992); *State v. Owens*, 1993 WL 81269 (Del. Super. Ct. Mar. 12, 1993); *State v. Hackett,* 1998 WL 278511 (Del. Super. Ct. May 8, 1998); *State v. Byrne,* 2017 WL 1842780 (Del. Super. Ct. Apr. 27, 2017); *State v. Clark*, 2018 WL 7197607 (Del. Super. Ct. Oct. 1, 2018).

[9]     Del. Super. Ct. Crim. R. 29(a) and (c). *See also Vouras v. State*, 452 A.2d 1165, 1169 (Del. 1982) (instructing trial judges that on a motion for judgment of acquittal professing insufficiency of identity evidence: "The motion is to be granted *only* when the state has presented insufficient evidence to sustain a verdict of guilt.") (emphasis added).

[10]     *State v. Biter*, 119 A.2d 894, 898 (Del. Super. Ct. 1955). *See also State v. Council*, 2016 WL 3880781, at *1 (Del. Super. Ct. July 12, 2016) (citing *Biter* and *Vouras*).

[11]     *Washington v. State,* 4 A.3d 375, 378 (Del. 2010).

- 6 -

defendant] guilty beyond a reasonable doubt of all the elements of the crime.'"[12]

"For the purpose of reviewing a claim of insufficient evidence there is no distinction between direct and circumstantial evidence."[13]

(14)  As noted before, other than identity, Thomas does not now dispute (nor has he ever disputed) the sufficiency of the State's evidence supporting *any* other element of the convicted crimes.  His jury was properly instructed on the identity element:

> An issue that has been raised in this case is the identification of the defendant.  To find the defendant guilty you must be satisfied beyond a reasonable doubt that the defendant has been accurately identified, that the offense or offenses charged in this case actually occurred, and that the defendant was in fact the one who committed the offense or offenses charged.  If there is any reasonable doubt about the identification of the defendant, you must give him the benefit of such doubt and find him not guilty.[14]

---

[12]  *Brown v. State*, 967 A.2d 1250, 1252 (Del. 2009) (emphasis in original) (alteration in original) (quoting *Priest v. State*, 879 A.2d 575, 577 (Del. 2005) (emphasis added) (citation omitted)).  *See also Carter v. State*, 933 A.2d 774, 777 (Del. 2007) ("Where a defendant claims his conviction was based upon insufficient evidence, the standard of review is whether the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt.").

[13]  *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994); *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991) (quoting *Shipley v. State*, 570 A.2d 1159, 1170 (Del. 1990)) (In making a post-verdict sufficiency-of-evidence determination, "[t]he fact that most of the State's evidence [is] circumstantial is irrelevant; 'the Court does not distinguish between direct and circumstantial evidence.'"); *Council*, 2016 WL 3880781, at *1 ("It is irrelevant if most of the State's evidence is circumstantial since the Court does not distinguish between direct and circumstantial evidence.").

[14]  Charge to the Jury, *State v. Thomas*, ID No. 1703001172, at 20 (Del. Super. Ct. May 1, 2018) (D.I. 61).  *See Weber v. State*, 971 A.2d 135, 157 (Del. 2009); *State v. Kellum*, 2010 WL 2029059 at *7 (Del. Super. Ct. May 19, 2010), *aff'd*, 12 A.3d 1154 (Del. 2011).

(15) Thomas's arguments suggest that if he can ascribe any hypothetically innocent explanation for each bit or compose some alternate narrative for its whole, then the State's inculpatory evidence and the rational inferences to be drawn therefrom are insufficient to sustain his conviction.

(16) But Thomas is wrong; that just isn't the law anymore, and hasn't been for a quite a while.[15] No—the same sufficiency-of-evidence test employed in all other instances applies when the question is whether the convicted defendant was proven to be the perpetrator of a crime.[16] A rational trier of fact could justifiably rest his or her finding that Thomas was Keevan Hale's killer on even "the barest of evidentiary threads."[17] For it is only the very rare "pure circumstantial evidence case" where "the range of abundant, innocent explanations" for the presence of the one and only piece of inculpatory evidence supporting a conviction will be "too vast for 'any rational trier of fact' to have found beyond a reasonable doubt an essential

---

[15] *See Williams v. State*, 539 A.2d 164, 166-69 (Del. 1988) (explaining that "prior to 1972, if the evidence was purely circumstantial and there was an alternative explanation of innocence that was consistent with the evidence, the conviction could not be sustained.").

[16] *Monroe v. State*, 652 A.2d 560, 562-63 (Del. 1995); *Couch v. State*, 2003 WL 21054789 (Del. May 7, 2003); *Weber*, 971 A.2d 135; *Vincent*, 996 A.2d 777.

[17] *Vincent*, 996 A.2d at 780.

element of [ ] charged offenses–namely, identity."[18]  This is not that rare case; not even close.

(17)   Nor is this the "rare case" in which "irreconcilable conflicts in the State's evidence [could] preclude[ ] any rational jury from reaching a harmonious version of the facts that would support a finding of guilt beyond a reasonable doubt."[19]

(18)   As factfinder, it was the jury's function to decide whether the evidence presented at trial proved, beyond a reasonable doubt, that Thomas committed the charged crimes.[20]  "[I]t [wa]s the sole province of the [jury as] fact finder to determine witness credibility, resolve conflicts  in testimony and draw any inferences from the proven facts."[21]  The jury had the sole "discretion to accept one

---

[18]   *Monroe*, 652 A.2d at 567. *See Vincent*, 996 A.2d at 779 (explaining that the *Monroe* reversal occurred because "[t]he logical inferences that [the reviewing court] could have drawn from the State's lone data point extended in too many directions for *any rational* trier of fact to conclude, beyond a reasonable doubt, that one single factual scenario actually occurred in that case.") (emphasis in original); *see also Byrne*, 2017 WL 1842780, at *3 n.22 (describing *Monroe* as "an extreme outlier in Delaware's sufficiency-of-evidence jurisprudence" and observing that "[r]esearch bears out that the result in *Monroe* is singular in Delaware law.").

[19]   *Washington*, 4 A.3d at 378-80 (holding that in such a "rare case" all of the requirements for an irreconcilable conflict must be found:  (1) "the conflict must be in the State's evidence;" (2) "the only evidence of the defendant's guilt must be the uncorroborated testimony of one or more accomplices;" and (3) "the inconsistencies must be material to a finding of guilt."); *Gray v. State*, 2014 WL 7895468, at *3 (Del. Dec. 29, 2014) (finding no "irreconcilable conflict" could exist because the case "did not depend solely upon the uncorroborated testimony of an accomplice.").

[20]   *McCoy v. State*, 112 A.3d 239, 267 (Del. 2015) (quoting *Washington*, 4 A.3d at 378).

[21]   *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).

portion of a witness' testimony and reject another part."[22] The jury "need not [have] believe[d] even uncontroverted testimony."[23] And, while Thomas seems to urge otherwise,[24] this Court when reviewing his sufficiency-of-evidence claim is not free to substitute the Court's own judgment for the jury's assessments in these areas.[25]

(19) When viewing the totality of the evidence and the reasonable inferences drawn therefrom in the light most favorable to the State, it is clear that a reasonable trier of fact could find Thomas was Keevan Hale's killer. The jury was presented evidence that : (a) Thomas, clad in all-black, "masked up" just before he entered the block on which Mr. Hale lived; (b) the shooting on that block began from the sidewalk on which Thomas stood; (c) no less than five rounds from a weapon discharging .410 bore shotgun ammunition were fired at Mr. Hale before he could shoot back; (d) Thomas was the only person in front of the Hale house when those five initial shots were fired; (e) Mr. Hale confirmed to police that the person on his sidewalk was his attacker; (f) Thomas had gunshot residue on his dominant hand;

[22]     *Pryor v. State,* 453 A.2d 98, 100 (Del. 1982).

[23]     *Poon,* 880 A.2d at 238.

[24]     *See* Apr. 30, 2018 Mot. for Judg. of Acquittal Tr. at 11-12 (D.I. 83) (arguing that the Court can resolve conflicts in evidence and make credibility determinations to remove the case from the jury).

[25]     *Poon,* 880 A.2d at 238; *Biter,* 119 A.2d at 898 ("The Court is without power to determine the weight of the evidence or where the preponderance lies.").

- 10 -

and (g) Thomas did not and could not flee from his murderous ambush only because he was struck by Mr. Hale's return fire. The jury heard this evidence firsthand from those present, watched surveillance video of Thomas's actions that night, and received corroborating forensic testimony from several expert witnesses.

(20) The jury derived these facts and circumstances from the trial evidence, drew reasonable inferences therefrom, and found Thomas was guilty beyond a reasonable doubt of Keevan Hale's murder. No doubt, the jury properly did so.

(21) *Any* rational factfinder could have found beyond a reasonable doubt that Thomas was the person who intentionally shot and killed Mr. Hale as Mr. Hale stood on his mother's porch that night drinking a beer. The trial evidence, when viewed in the light most favorable to the State, in no way suggests the existence of some unknown third-party killer who somehow slipped between Thomas and Keevan Hale, fatally shot the latter, was the actual target of Mr. Hale's return fire, and then slipped away wholly undetected. Rather, the jury's guilty verdict is well-supported by a natural, common-sense interpretation of that presented to it.

(22) The Court finds that the jury, having heard and seen all of the evidence offered by the State and the Defense, could, and did, reasonably conclude that there was sufficient evidence to support Kashiem Thomas's first-degree murder and related firearms convictions. His invitation to now intervene post-verdict and pre-appeal to substitute a judgment opposite the jury's is declined.

- 11 -

**IT IS HEREBY ORDERED,** that Kashiem Thomas's Motion for Judgment of Acquittal is **DENIED.**


**Paul R. Wallace, Judge**


Original to Prothonotary

cc:    Renee L. Hrivnak, Esquire, Deputy Attorney General
        Cari A. Chapman, Esquire, Deputy Attorney General
        Kathryn A.C. Van Amerongen, Esquire