**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) |
| v. | )    **ID No. 1503017603** |
| | ) |
| RAYSHAUN JOHNSON, | ) |

Submitted: December 19, 2022
Decided: March 14, 2023

## ORDER DENYING MOTION FOR POSTCONVICTION RELIEF

Upon consideration of the Defendant Rayshaun Johnson's amended Motion for Postconviction Relief (D.I. 107), his trial counsel's affidavit (D.I. 112), the State's response (D.I. 114), and the record in this matter, it appears to the Court that:

### I. FACTUAL AND PROCEDURAL BACKGROUND

(1)    After a five-day jury trial, Rayshaun E. Johnson was found guilty of Murder in the First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Conspiracy in First Degree.[1] He was later sentenced to serve, *inter alia*, a term of life imprisonment.[2]

(2)    Mr. Johnson filed a direct appeal to the Delaware Supreme Court. His convictions and sentence were affirmed.[3]

---

[1]    Verdict Form, *State v. Johnson*, ID No. 1503017603 (Del. Super. Ct. Feb. 16, 2017) (D.I. 65).

[2]    Sentencing Order, Oct. 5, 2018 (D.I. 79).

[3]    *Johnson v. State*, 2019 WL 4180617, at *1 (Del. Sept. 3, 2019).

(3) Thereafter, Mr. Johnson docketed a motion for postconviction relief.[4] The Court appointed Mr. Johnson postconviction relief counsel who then filed an amended motion.[5] The State responded,[6] Mr. Johnson replied,[7] and the motion is now ripe for decision.

## II. THE POSTCONVICTION MOTION

### A. MR. JOHNSON'S MOTION CAN BE CONSIDERED ON ITS MERITS.

(4) Before the Court can consider the substance of any postconviction claim, it must first address Criminal Rule 61's procedural requirements.[8] The procedural bars in Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[9]

(5) Here, Mr. Johnson's postconviction motion was filed less than a year after his judgment of conviction became final. So, it's timely. This is also Mr. Johnson's first motion for postconviction relief. So, it's not repetitive. And as Mr. Johnson's claim is alleging ineffective assistance of counsel—which generally

---

[4]   Mot. for Postconviction Relief, July 7, 2020 (D.I. 91).

[5]   Order Granting Appointment of Counsel, July 27, 2020 (D.I. 93); Am. Mot. for Postconviction Relief, Mar. 30, 2022 (D.I. 107).

[6]   State's Response, Nov. 3, 2022 (D.I. 114).

[7]   Reply Br., Dec. 19, 2022 (D.I. 115).

[8]   *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[9]   *State v. Taylor*, 2017 WL 5054262, at *2 (Del. Super. Ct. Oct. 23, 2017). If any of these bars apply, then the inmate must show entitlement to relief under Rule 61(i)(5). *Id.*

-2-

can't be raised on direct appeal—he is neither procedurally barred from raising it in this collateral proceeding nor has it been formerly adjudicated.

(6)     Accordingly, the Court will address the merits of Mr. Johnson's claim.

## B. MR. JOHNSON'S SOLE POSTCONVICTION CLAIM

(7)     Mr. Johnson suggests his trial counsel was ineffective for failing to seek exclusion of evidence or testimony regarding then-fourteen-year-old eyewitness, Umar Mohammed's, pre-trial identification of Mr. Johnson as one of the shooters who gunned down Theodore Jackson.[10] If trial counsel would have sought exclusion of such evidence, says Mr. Johnson, trial counsel would have been successful.[11] And in Mr. Johnson's eyes, without that evidence "there [was] a reasonable probability that the jury would have acquitted him on the Murder First charge . . . ."[12]

## III.  APPLICABLE LEGAL STANDARDS

(8)     A movant who claims ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[13]

---

[10]   Am. Mot. for Postconviction Relief at 37-40.

[11]   *Id.* at 37.

[12]   *Id.* at 39-40.

[13]   *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Alston v. State*, 2015 WL 5297709, at *2-3 (Del. Sept. 4, 2015).

(9) There is a strong presumption that counsel's representation was reasonable,[14] and "[i]t is not this Court's function to second-guess reasonable trial tactics" engaged by trial counsel.[15] Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[16] A movant must prove both—deficient attorney performance and resulting prejudice—to succeed in making an ineffective assistance of counsel claim.[17] Failure to do so on either will doom the claim, and the Court need not address the other.

## IV. DISCUSSION

(10) Mr. Johnson challenges his first-degree murder conviction via an assertion that if trial counsel had been effective, he would have successfully moved to exclude Mr. Mohammed's out-of-court identification.[18] And by not doing so, Mr. Mohammed's in-court testimony was bolstered because of that previous faulty

---

[14] *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[15] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[16] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)).

[17] *Strickland,* 466 U.S. at 694; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant." (citation omitted)); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[18] Am. Mot. for Postconviction Relief at 18-40.

identification.[19]

(11)  The State called Mr. Mohammed as an eyewitness to the shooting.[20] After laying the proper foundation the State played an interview conducted by the Children's Advocacy Center (CAC) with Mr. Mohammed the night of the shooting.[21]

(12)  In that interview Mr. Mohammed recounted the shooting he had just witnessed and told the CAC interviewer that one of the two suspects he observed had dreadlocks and that both were "black, like dark-skinned."[22]  When asked whether the suspects had any facial features or tattoos, Mr. Mohammed said that he "didn't see their faces."[23]  But that he did see a big tattoo on one of the suspect's arms and a number of chest tattoos on one of the suspects.[24]  Mr. Mohammed reiterated that he "didn't really see their face" instead he "just saw like their hair and the hat . . . ."[25]

(13)  Mr. Mohammed was later interviewed by police detectives.  During that

---

[19]  *See id.* at 38-39.

[20]  Feb. 13, 2017 Trial Tr. at 160-67 (D.I. 75).

[21]  *Id.* at 166-167.  That interview was conducted by a CAC forensic interviewer at the request of the Wilmington Police Department. Appendix to Def.'s Am. Mot. for Postconviction Relief ("Def.'s App.") at A168-A169 (D.I. 108).

[22]  Def.'s App. at A169.

[23]  *Id.* at A170.

[24]  *Id.* at A169-A171.

[25]  *Id.* at A172; A176 ("I don't know because like the distance that I was I didn't really see their face.").

interview, he was shown a six-pack photo array.[26] Detectives first asked whether the suspect was in the six-pack to which Mr. Mohammed said no, but then told detectives he thought it could be Number 3, until finally arriving at Number 4 and circling and signing his name to that choice.[27]

(14) At trial, on direct examination, the State showed Mr. Mohammed, without objection from trial counsel, the photo he circled and signed.[28] On cross-examination trial counsel asked Mr. Mohammed:

> Q. In this video on several occasions, at least four, you say you didn't see the face of the individual that was doing the shooting; isn't that correct?
>
> A. Yes.
>
> Q. Yet several days later you picked somebody out. Did you pick somebody out from the shooting or is it somebody you may have seen earlier in the day?[29]

(15) Trial counsel explained this tactic in his Rule 61(g) affidavit.[30] Specifically, he purposely did not attempt to exclude the out-of-court identification because he sought "[t]o demonstrate Mohammed's bias," and to this end "his out of court identification as well as his inability to make prior identifications was essential

---

[26] *Id.* at A179.

[27] *Id.* at A179-A181.

[28] Feb. 14, 2017 Trial Tr. at 4-5 (D.I. 74).

[29] *Id.* at 6.

[30] Trial Counsel Affidavit at 2 (D.I. 112).

to the defense."[31]  In short, counsel explained that his "decision to not challenge the identification . . . was part of the defense strategy."[32]

(16)  "[A] lawyer's performance is constitutionally deficient only if no competent attorney would have chosen the challenged course of action."[33]  It is not the role of the Court to determine "what the best lawyers would have done . . . [or] even what most good lawyers would have done."[34]  "Instead, the Court must determine whether trial 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment.'"[35]

(17)  While Mr. Johnson wishes to frame it otherwise,[36] "*Strickland* doesn't deem trial counsel ineffective for not pursuing the best or most successful strategy; instead, it requires trial[] counsel be informed by a thorough investigation of law and

---

[31]  *Id.*

[32]  *Id.*

[33]  *Green v. State*, 238 A.3d 160, 178 (Del. 2020) (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)).

[34]  *Id.* (alteration in original) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

[35]  *State v. Peters*, 283 A.3d 668, 686 (Del. Super. Ct. 2022) (alteration in original) (citing *Burns v. State*, 76 A.3d 780, 788 (Del. 2013)).

[36]  Reply Br. at 2.  Mr. Johnson's assertion that trial counsel's strategy was unreasonable is rooted in his belief that a better strategy was available. *Id.* ("Trial counsel never asserted in their affidavits that they, after reviewing the evidence against Mr. Johnson and the law, decided that only challenging Mohammed's out-of-court identification at trial was the *best* strategic route to take." (emphasis added)).  Maybe so.  But under *Strickland*, trial counsel is not deficient for failing to pursue what others might consider the best or a better strategy. *Peters*, 283 A.3d at 687 (citing *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014)); *Burns*, 76 A.3d at 788.

facts."[37] And the reasonableness of trial counsel's actions cannot be measured by whether the strategy was successful.[38]

(18) Trial counsel made a strategic decision to not challenge the out-of-court identification so that he could use it to impeach Mr. Mohammed and, in turn, the entirety of the police investigation. That's not counsel deficiency. And on that basis alone, Mr. Johnson's sole claim of ineffective assistance fails.[39]

(19) Even if Mr. Johnson could show his trial counsel was deficient, Mr. Johnson cannot show resulting prejudice. The necessary prejudice here must be a reasonable probability that but for counsel's errors, the State would not have had enough evidence to convict Mr. Johnson of first-degree murder.[40]

(20) On the prejudice prong, Mr. Johnson asserts that "without the admission of Mohammed's unreliable identification, there is a reasonable probability that the jury would have acquitted him on the Murder First charge . . . ."[41] Mr. Johnson asserts that "Mohammed was the only eyewitness to identify [him], aside from Harris, who was an incredibly self-interested witness."[42] Whether the jury chose to credit the testimony given by Mr. Mohammed and Christopher Harris

---

[37] *Peters*, 283 A.3d at 687 (citing *Hoskins*, 102 A.3d at 730; *Burns*, 76 A.3d at 788).

[38] *State v. Wright*, 653 A.2d 288, 297 (Del. 1994).

[39] Am. Mot. for Postconviction Relief at 18-40

[40] *Harden v. State*, 180 A.3d 1037, 1045 (Del. 2018).

[41] Am. Mot. for Postconviction Relief at 39-40.

[42] *Id.* at 38.

is within their province.[43] Mr. Mohammed testified at trial that he saw the shooters.[44] What was left was either the corroboration or impeachment of his in-court testimony. And to pursue those divergent ends, both the State and Mr. Johnson wanted to use his out-of-court identification and interviews.

(21) The impact of the out-of-court identification went to the credibility of Mr. Mohammed—and in trial counsel's view, the police investigation—the determination of which was in jury's hands.[45]

(22) Even without Mr. Mohammed's testimony the evidence was substantial. The jury heard from 23 witnesses (including Mr. Mohammed) who testified that Jeffrey Clark received information that someone was "disrespecting" him and, along with Mr. Johnson and Mr. Harris, went to confront that individual.[46] The jury heard testimony that both Mr. Clark and Mr. Johnson were carrying guns.[47] The jury heard testimony that placed Mr. Johnson and Mr. Clark at the scene of the shooting when it occurred.[48] The jury heard testimony that the victim was shot by

---

[43] *Washington v. State*, 4 A.3d 375, 378 (Del. 2010).

[44] Feb. 13, 2017 Trial Tr. at 162-63.

[45] *Washington*, 4 A.3d at 378.

[46] Feb. 15, 2017 Trial Tr. at 59-61 (Christopher Harris) (D.I. 77); Feb. 13, 2017 Trial Tr. at 36-37 (Marcel Swanson); Feb. 14, 2017 Trial Tr. at 58-59, 62-63 (Doris Reyes).

[47] Feb. 13, 2017 Trial. Tr. at 66-67.

[48] Feb. 13, 2017 Trial Tr. at 29-30; Feb. 15, 2017 Trial Tr. at 62-69; Feb. 13, 2017 Trial Tr. at 148-49.

bullets fired from two guns.[49] And the jury heard testimony that Mr. Johnson told a friend "we got him" in reference to the killing.[50]

(23) When viewing the totality of the evidence and the reasonable inferences drawn therefrom in the light most favorable to the State, it is clear that a reasonable trier of fact could find Mr. Johnson committed first-degree murder. So Mr. Johnson fails to satisfy the second prong of *Strickland*.

## VI. CONCLUSION

Mr. Johnson has proved neither the deficient performance by counsel nor the prejudice required for relief under *Strickland*. Accordingly, Mr. Johnson's Motion for Postconviction Relief is **DENIED**.

**SO ORDERED this 14th day of March, 2023.**

**Paul R. Wallace, Judge**

Original to Prothonotary

cc:    Matthew Bloom, Deputy Attorney General
       Natalie Woloshin, Esquire
       Anthony A. Figliola, Jr., Esquire

---

[49] Feb. 14, 2017 Trial Tr. at 95-97.

[50] Feb. 13, 2017 Trial Tr. at 36-37 (Marcel Swanson)

Q. What did he say when he called your phone?

A. He says, "What's up?" I said, "What's up?" He said, "Remember the boy Kyle I was telling you about?" I said, "Yes." I think we got him."