**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE       )
                          )

  **v.**                    )       **ID Nos. 1806010081, 1807016528,**
                          )            **and 1807016545**

**KILI L. MAYFIELD,**      )
             **Defendant.**  )

Submitted: July 30, 2024
Decided: October 28, 2024

*Upon Defendant Kili Mayfield's Motion for Postconviction Relief,*
**DENIED**.

*Upon Postconviction Counsel's Motion to Withdraw,*
**GRANTED**.

## ORDER

This 28th day of October, 2024, upon consideration of Defendant Kili Mayfield's Motion for Postconviction Relief (D.I. 115[1]), his supplements to that motion (D.I. 116, 134, and 135), his postconviction attorney's Motion to Withdraw with its appendix (D.I. 126, 127), the affidavits of standby trial and appellate counsel (D.I. 136, 140), the State's response (D.I. 137), and the record in this case, it appears to the Court that:

## I. FACTUAL AND PROCEDURAL BACKGROUND

(1) The then-to-date factual and procedural background of Mr. Mayfield's

---

[1] To avoid confusion in this consolidated case, the Court will refer only to the docket entries assigned under Case No. 1806010081.

case was set forth by our Supreme Court in its decision on direct appeal as follows:

In July 2018, Mr. Mayfield was arrested for a series of forcible rapes of three different women in Wilmington. All of the charged offenses were consolidated into a single indictment. The Public Defender's Office undertook Mr. Mayfield's legal representation. On December 18, 2018, Mr. Mayfield filed a motion to waive counsel and proceed *pro se*. Both the State and the Public Defender's Office wrote letters to the court expressing concern with Mayfield's motion, citing the serious nature of the charges and the severe penalties he was facing. Mr. Mayfield responded by writing a letter to the court reasserting his desire to proceed *pro se*. On February 4, 2019, a Superior Court judge specifically assigned to the case held a hearing to address the motion. Mr. Mayfield unequivocally informed the court that he wished to proceed *pro se*. Following a thorough colloquy with Mr. Mayfield, the judge determined that Mr. Mayfield was knowingly, intelligently, and voluntarily waiving his right to be represented by counsel. His motion to proceed *pro se* was granted and the attorney assigned to Mr. Mayfield's case by the Public Defender's Office was appointed standby counsel. The judge explained to Mr. Mayfield that standby counsel would "not take any legal action" on his behalf, that counsel was there as a resource to him and the court, but she would not "independently act." On February 13, 2019, Mr. Mayfield was given a trial date of July 9, 2019.

In the months following the February 4, 2019 hearing, Mr. Mayfield was very energetic in pre-trial activity. He filed several motions, including a motion to dismiss all charges, two motions to suppress evidence, an amended motion to suppress evidence, a motion for production of discovery, a motion in response to a protective order, and a motion *in limine* to exclude from evidence statements made by one of the alleged victims. Status conferences were held on April 5 and May 31, 2019. All of Mr. Mayfield's motions were denied. At a hearing on June 17, 2019, Mr. Mayfield requested a bench trial and waived his right to a jury trial.

On July 8, 2019, the day before Mr. Mayfield's bench trial was set to begin, the judge held a status conference. At this conference,

and for the first time since waiving his right to counsel and electing to proceed *pro se*, Mr. Mayfield orally requested that he be represented by counsel at trial. He reported to the judge that he was requesting counsel because he felt overwhelmed and was not prepared to try the case. He informed the judge that his family had contacted a private attorney who was willing to enter his appearance. He also informed the judge that the private attorney wanted a 60-day continuance. The judge asked standby counsel if she could contact the private attorney and hear directly from him where the efforts to retain his services stood. The judge recessed the conference so that she could do so. When the conference resumed, standby counsel reported that the private attorney's office confirmed that there had been a consultation with Mr. Mayfield's girlfriend, but no appearance would be entered until a retainer was paid. Later in the conference, standby counsel related that the private attorney's office also indicated that he would need a continuance of 90 days, not 60 days. Standby counsel was also able to reach Mr. Mayfield's girlfriend during the recess. The girlfriend stated that she had part of the retainer. Standby counsel impressed upon the girlfriend that the private attorney needed to request a continuance because trial was scheduled for the next day. The girlfriend said that her plan was to make payment of the retainer that day.

The judge then asked for the State's position "on basically what is now a motion to continue the trial for the entry of an appearance of an attorney." The State strongly opposed a continuance. The State argued that its witnesses were "all lined up." The prosecutor argued that there "are sensitive victim issues in this case." He explained that the State had met with the alleged victims, "who are extremely fragile individuals," multiple times "over the past few weeks intentionally at a stage closer to trial to minimize the amount of mental anguish basically that they have to deal with in going through this process." Later in the conference, the prosecutor mentioned that one of the alleged victims would not be appearing at trial, which he said could be attributable, at least in part, to the time it had taken to get the case to trial. He reported that she had been in state custody a month or two ago, but upon her release had fled the state and could not be located. He argued that a continuance would be prejudicial to the State's case.

The judge then asked Mr. Mayfield when he had started his attempt to obtain private counsel. Mr. Mayfield responded that it had been about a month ago. When asked by the judge why he had not communicated his change of mind then, Mr. Mayfield responded that he and his family had talked about it several times, that he and his family had decided it was best to seek an attorney, and the plan was to pay the attorney to step in and take over the case.

After further discussion of the fact that Mr. Mayfield was requesting counsel on the day before his trial date, the trial judge stated that he would not continue the case, adding, "[i]f an attorney comes here tomorrow ready to enter his or her appearance and asks for a continuance on your behalf, then I will at least hear that at that time. But I'm not going to do it on the speculation that that may occur."

The judge then asked the prosecutor how many expert witnesses the State had. He responded that there were three, two of whom were scheduled to testify on the first day of trial. Later in the conference he reported that the two scheduled to testify on the first day of trial were DNA experts. The judge then noted that Mr. Mayfield's motions made it clear that he had "scoured the discovery materials[,]" and asked him whether his attempts to prepare himself for trial had changed since he had started thinking about counsel. Mr. Mayfield responded that they had, that he thought counsel would be entering an appearance, and that he was not prepared for trial the next day.

The judge then asked Mr. Mayfield what he would like to see happen if the private attorney his family was trying to secure did not enter an appearance the next morning before trial. Mr. Mayfield responded that, in that event, he would like to be represented by the Public Defender's Office. The judge then asked the prosecutor and standby counsel when they would be able to try the case if the trial were continued. Standby counsel reported that she had a murder trial in September and that there were "some issues that our in-house people have brought up or brought to my attention [including expert witness issues] that I think need to be addressed." She believed that she could not be ready to try the case until close to the end of the year. The judge asked the prosecutor and standby counsel to provide

-4-

a realistic, potential trial week, if the case were continued. A recess was then taken.

Following the recess, the prosecutor explained that because of other scheduled trials, the earliest he would be available to try the case would be November or December (without taking into account witness availability). He also reported that the State had seventeen or eighteen witnesses. Standby counsel reported that her schedule would allow her to try the case in the first or second week of December.

Discussion then turned to the fact that Mr. Mayfield had recently filed a witness list with the court. The judge noted that the parties had allowed two weeks for trial when it was scheduled as a jury trial, and asked standby counsel whether she could attend to having subpoenas served upon Mr. Mayfield's witnesses. She indicated that she could.

After listening to final comments from the State and Mr. Mayfield, the judge began his ruling by observing that:

> At play here is the intersection of two very important rights, first of all, the right to counsel in a case. And generally, the courts will recognize that a right to counsel is paramount. And sometimes those two rights, right to counsel and right to proceed pro se, collide in certain ways.

> The nature of the two rights generally will favor the right to counsel, which, if denied, leaves the defendant without a trained professional to guide his or her litigation. And the importance of that right to counsel is reflected in the cautions that are required when a defendant seeks to relinquish that right to counsel. Those waivers must be made in unequivocal language as we understand from *Faretta* and the cases thereafter. It has to be a knowing, intelligent, and voluntary decision.

The judge then proceeded to deny Mr. Mayfield's request for counsel. The reasons he gave can be summarized as follows: Since undertaking self-representation, Mr. Mayfield had been vigorous in

his own defense, "filing motion after motion, making it very clear that he has read everything that, as I said, picking apart times, dates, statements, inconsistencies, and concerns about the evidence he had. At all points, he indicated a full wish to proceed pro se." While the judge had encouraged Mr. Mayfield to make use of standby counsel in preparing for trial, it had been made clear when Mr. Mayfield's motion to proceed *pro se* was granted that all that would be expected from standby counsel was that she be "prepared to take over . . . logistics and only deal with . . . logistics," at least in part because of "the relationship, the breakdown of the relationship to a certain extent" between Mr. Mayfield and standby counsel. "In the meantime," the State had prepared 17 or 18 witnesses for trial, including three experts, two of whom were scheduled to testify on the first day of trial. Mr. Mayfield had the expert reports and had "written exhaustively about what he believes about the experts." The State had "already lost one of its complaining witnesses," at least in part, due to the passage of time. Mr. Mayfield had been provided with *Jencks* material "well ahead of time so that he has the allegations of the witnesses and their statements." Mr. Mayfield's filings showed that he had "gone through all the discovery materials and prepared himself." He had prepared a defense witness list with nine witnesses. He had not issued any "concern about proceeding *pro se* until today." Appointment of counsel for Mr. Mayfield would necessitate a four or five month continuance. The court concluded, "Mr. Mayfield's request and the basis for his request are not outweighed by the other prejudice that would be visited by a continuance."

Mr. Mayfield's bench trial began as scheduled the next day and resulted in the aforementioned convictions.[2]

(2)     Mr. Mayfield was sentenced to a natural-life term in prison plus an

additional 127 years of unsuspended incarceration, various suspended terms of

---

[2]     *Mayfield v. State*, 256 A.3d 747, 749-52 (Del. 2021) (found in PCR Counsel's App'x (D.I. 127 and D.I. 128) at A-848-867 [hereinafter A-***] (contents of those two comprehensive volumes)).

incarceration, and periods of probation.[3]

(3)     Mr. Mayfield, then with the assistance of newly appointed counsel,[4] filed and prosecuted a direct appeal to the Delaware Supreme Court.[5] Notwithstanding those efforts, his convictions and sentence were affirmed on direct appeal.[6]

## II.  MR. MAYFIELD'S MOTION FOR POSTCONVICTION RELIEF

(4)     Mr. Mayfield filed his first timely postconviction motion *pro se* with an accompanying application for counsel.[7] The Court granted his request for counsel and Benjamin S. Gifford, IV, Esquire, (hereinafter "Postconviction counsel" or "PCR Counsel") was appointed to represent Mr. Mayfield in this postconviction proceeding.[8]

(5)     The Court provided Postconviction counsel with the opportunity to review the complete record in this matter and file an amended motion if, in his

---

[3]   D.I. 108 (A-671-687—Sentencing Transcript); D.I. 96 (A-688-696—Modified Sentencing Order).

[4]   *See, e.g.*, Not. of App., *Mayfield v. State*, No. 493, 2019 (Del. Jan. 8, 2020) (notice of appeal filed by ODS counsel); A-706 (letter from ODS appellate counsel); Entry of App., *Mayfield v. State*, No. 493, 2019 (Del. Mar. 10, 2020) (entry of appearance by ODS appellate counsel); A-707 (entry of appearance by substitute ODS appellate counsel).

[5]   A-708-759 (Direct Appeal Opening Brief); A-803-846 (Direct Appeal Reply Brief); A-811-822 (Transcript of Direct Appeal Oral Argument); A-842-846 (Motion for Rehearing *en Banc*).

[6]   *Mayfield v. State*, 256 A.3d 747 (Del. 2021), *reh'g denied*, (July 27, 2021).

[7]   D.I. 115 (*pro se* motion for postconviction relief); D.I. 116 (motion for appointment of postconviction counsel).

[8]   D.I. 119.

professional judgment, amendment was appropriate.

(6)     Postconviction counsel has now filed a Motion to Withdraw as Counsel.[9]  In his motion, Postconviction counsel reports that—after careful review of Mr. Mayfield's case—he "cannot ethically advance any postconviction claims on behalf of Mr. Mayfield"[10]; and further, that he did not discover any other potential meritorious grounds for relief.[11]

(7)     Under this Court's Criminal Rule 61(e)(7):

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.[12]

(8)     Postconviction counsel provided Mr. Mayfield with a copy of his withdrawal motion and advised Mr. Mayfield of his ability under Rule 61(e)(7) to file a response thereto.[13]  Mr. Mayfield responded to the motion to withdraw with two supplementary filings.

(9)     Mr. Mayfield's standby and his appellate counsel have filed affidavits

---

[9]     PCR Counsel's Mot. to Withdraw Mot. and Mem. (D.I. 126).

[10]    PCR Counsel's Mot. to Withdraw Mem. 19.

[11]    *Id.* at 1.

[12]    Del. Super. Ct. Crim. R. 61(e)(7).

[13]    *See* PCR Counsel's Mot. to Withdraw Mem. 18.

addressing Mr. Mayfield's postconviction claims alleging ineffective assistance of counsel.[14]

(10) As just mentioned, in addition to his original *pro se* motion for postconviction relief, Mr. Mayfield has docketed what he entitled an "amended postconviction motion" and another supplement—both of the latter filings came after his postconviction counsel's motion to withdraw.[15] The Court deems these three filings collectively as the response permitted by Rule 61(e)(7).

(11) The State has filed its response opposing Mr. Mayfield's postconviction motion.[16]

## III. RULE 61's PROCEDURAL REQUIREMENTS

(12) To evaluate Mr. Mayfield's postconviction claims, and to determine whether assigned counsel's motion to withdraw should be granted, the Court should be satisfied that PCR Counsel conducted a truly conscientious examination of the record and the law for claims that could arguably support Mr. Mayfield's Rule 61 motion. The Court should also conduct its own review of the record to determine whether Mr. Mayfield's Rule 61 motion is devoid of any, at least, arguable postconviction claims.[17]

---

[14]  D.I. 136 and D.I. 140.

[15]  D.I. 134 and 135.

[16]  D.I. 137.

[17]  *State v. Lindsey*, 2023 WL 2535895, at *5 (Del. Super. Ct. Mar. 16, 2023), *aff'd*, 2023 WL

(13) Delaware courts must consider Criminal Rule 61's procedural requirements before addressing any substantive issues.[18] The procedural bars in Rule 61 are timeliness, repetitiveness, procedural default, and former adjudication.[19] Of these, two are relevant here.

(14) Under Rule 61(i)(4): "Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[20]

(15) Rule 61(i)(3) bars any particular claim that could have been but was not raised at trial or on direct appeal, unless the defendant can show cause for relief from the procedural default and prejudice.[21] Generally, Rule 61(i)(3) is inapplicable to

---

8232287 (Del. Nov. 27, 2023).

[18] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[19] *State v. Peters*, 283 A.3d 668, 680 (Del. Super. Ct. Sept. 30, 2022), *aff'd*, 2023 WL 3880124 (Del. June 7, 2023). *State v. Madison*, 2022 WL 3011377, at *2 (Del. Super. Ct. July 29, 2022), *aff'd*, 2022 WL 17982946 (Del. Dec. 29, 2022). These procedural requirements are considered on a claim-by-claim basis. *Id.* And, if any one of these bars applies to a specific claim, then the inmate must show entitlement to exception therefrom under Rule 61(i)(5). *Id.*; Super. Ct. Crim. R. 61(i)(5) (providing that Rule 61's procedural bars found (1)(1)-(4) in do not apply to a claim: that the court lacked jurisdiction; that pleads with particularity new evidence of the defendant's actual innocence; or, that application of a new rule of constitutional law made retroactive on collateral review is required.).

[20] Super. Ct. Crim. R. 61(i)(4).

[21] Super. Ct. Crim. R. 61(i)(3) ("Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights.").

claims of ineffective assistance of counsel—which in the norm can't be raised against trial counsel on direct appeal[22] and as a practicality aren't yet ripe against appeals counsel until the resolution of direct appeal. And so, the Court usually considers those claims on their merits during postconviction proceedings.[23]

## IV. MR. MAYFIELD'S POSTCONVICTION CLAIMS

(16) The Court has combed through Mr. Mayfield's multiple filings. Therein, Mr. Mayfield first pens three unadorned claims in his initial motion for postconviction relief (and accompanying request for counsel).[24] The Court replicates them here:

(a) "Violation Sixth Amendment, to Counsel of Choice";

(b) "Fifth Amendment right, to front my accuser"; and

(c) "Fourth Amendment right, failure to conduct pretrial investigation".[25]

In his supplements, Mr. Mayfield complains his direct appeal counsel was ineffective for:

---

[22] *See State v. Smith*, 2017 WL 2930930, at *1 (Del. Super. Ct. July 7, 2017); *see also Guy v. State*, 82 A.3d 710, 715 (Del. 2013) ("In a jurisdiction like Delaware, where ineffective assistance of trial counsel may not be raised on direct appeal, the first post-conviction proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim.") (cleaned up).

[23] *State v. Martin*, 2024 WL 3273429, at *2 (Del. Super. Ct. July 1, 2024).

[24] *See Pro Se* Mot. for Postconviction Relief 3 (referring reader to the motion for appointment of counsel for a listing of his grounds for Rule 61 relief).

[25] Mot. for Appt. of Counsel 2 (D.I. 116).

-11-

(d)   Failing to argue that his constitutional right to a fair trial was violated when the Court denied Mr. Mayfield's request to call the Justice of the Peace Court magistrate who authorized his arrest warrant as a trial witness;[26]

(e)   Failing to challenge the trial judge's questioning of a witness;[27]

(f)   Failing to challenge the denial of Mr. Mayfield's mid-trial motion for judgment of acquittal for the counts related to victim C.C.;[28] and,

(g)   Failing to challenge Mr. Mayfield's waiver of a jury trial.[29]

(17)   For the reasons explained now, Mr. Mayfield's claims asserted through his motion for postconviction relief (and his supplements) are **DENIED.**

## A.  CLAIMS IN THE INITIAL POSTCONVICTION MOTION

(18)   Mr. Mayfield's bullet-point claims in his opening *pro se* postconviction filing do not warrant relief.

(19)   *First*, during his direct appeal to the Delaware Supreme Court, Mr. Mayfield was represented by counsel who argued a single claim—that Mr. Mayfield's Sixth Amendment right to assistance of counsel was violated when this Court denied his last-minute request for reappointment of counsel and a

---

[26]  Supp. Mem. in Support of Mot. for Postconviction Relief 1-2 (D.I. 134).

[27]  *Id.* at 2-4.

[28]  *Id.* at 4-5.

[29]  Amended Mot. for Postconviction Relief 1-2 (D.I. 135).

continuance of his trial for counsel's reengagement.[30]

(20)  "Justice does not require that an issue that has been previously considered and rejected be revisited simply because the claim is refined or restated."[31]  On direct appeal, the Supreme Court addressed Mr. Mayfield's Sixth Amendment right-to-counsel claim in a manner that triggers Rule 61(i)(4)'s former adjudication bar.

(21)  When assessing a certain postconviction claim this Court might find its underlying issues to have been fully addressed in an earlier adjudication of a related claim in the case and "conclude that the interests of justice would not be served by any further consideration of them."[32]  "No doubt, a postconviction court is often urged by a Rule 61 petitioner to address a claim close but not identical to one that was substantively resolved—*i.e.*, formerly adjudicated—on direct appeal."[33]  Then, "the relevant determination is whether the underlying issue of a claim has already been decided."[34]  And when it has, the latter postconviction claim is properly deemed procedurally barred because "a defendant is not entitled to have a court re-

---

[30]  *See* A-708-759; A-803-846; A-811-822; *Mayfield*, 256 A.3d at 748.

[31]  *Riley v. State*, 585 A.2d 719, 721 (Del. 1990); *State v. Madison*, 2018 WL 1935966, at *4-5 (Del. Super. Ct. Apr. 11, 2018), *aff'd*, 2018 WL 6528488 (Del. Dec. 11, 2018).

[32]  *Riley*, 585 A.2d at 721.

[33]  *State v. White*, 278 A.3d 680, 686 (Del. Super. Ct. 2022), *reh'g denied*, 2022 WL 4091115 (Del. Super. Ct. Sept. 7, 2023), *aff'd*, 2023 WL 2173680 (Del. Feb. 22, 2023).

[34]  *Madison*, 2018 WL 1935966, at *4.

examine an issue that has been previously resolved."[35]

(22)     Here, Mr. Mayfield's Sixth Amendment right-to-counsel claim—which included the notion that he should have been allowed to delay trial and re-engage his appointed attorney or hire his counsel of choice—was substantively examined and resolved on direct appeal. Thus, his current Sixth Amendment complaint is procedurally barred under Rule 61(i)(4).

(23)     *Second*, Mr. Mayfield's claim that he was denied his constitutional right to confront one of his victims when she did not testify as a witness[36] was waived by him at trial. Prior to trial, the State filed a motion *in limine* to admit the out-of-court statements of R.S., the victim of a 2014 rape, who could no longer be located.[37]

(24)     When one of the initial responding police officers who had heard R.S.'s screams from an alleyway was examined at trial, Mr. Mayfield initially objected to

---

[35]  *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992). *See Garvey v. State*, 2009 WL 2882873, at *1 (Del. Sept. 10, 2009) (finding a claim procedurally barred by Rule 61(i)(4) because the court "disagree[d] with [movant]'s contention that his current claim [wa]s sufficiently distinguishable from [a] previous claim to warrant consideration in this [postconviction] proceeding" as postconviction movant "merely recast his previously-rejected claim as an attack on his indictment.").

[36]  Mr. Mayfield labels this supposed error as violative of a right guaranteed by the Fifth Amendment. Mot. for Appt. of Counsel 2. But it is the Sixth Amendment of the United States Constitution that requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. *See also* DEL. CONST. art. I, § 7 ("In all criminal prosecutions, the accused hath a right to . . . meet the witnesses in their examination face to face . . . ").

[37]  A-215-226; A-405.

a single statement by R.S. to the office that she had been raped.[38]  But, he then agreed to that lone statement's admissibility.[39]  From there, Mr. Mayfield elicited more of R.S.'s statements to the police officer on cross-examination and agreed to the State's admission of the remainder on re-direct.[40]  Given this sequence of trial events, Mr. Mayfield cannot now raise a Confrontation Clause claim that he himself waived earlier.[41]

(25)  *Last*, Mr. Mayfield suggests that his rights guaranteed by the Fourth Amendment were violated by a "failure to conduct [a] pretrial investigation."[42]  Given his many complaints regarding the police investigation and his appointed counsel's performance before he took on his own representation, it is simply not clear which Mr. Mayfield is now contesting. No matter. "Under settled Delaware case law, this Court will not consider claims of this type if they are conclusory or unsubstantiated."[43]   Here, Mr. Mayfield has—even after filing two separate supplements to his postconviction motion—done nothing to clarify or substantiate this threadbare allegation.  It, in turn, warrants no further review.[44]

---

[38]  A-532-538.

[39]  A-538-539.

[40]  A-538-541.

[41]  *See generally* Super. Ct. Crim. R. 61(i)(3).

[42]  Mot. for Appt. of Counsel 2.

[43]  *State v. Joyner*, 2006 WL 2270937, at *2 (Del. Super. Ct. Aug. 7, 2006).

[44]  *Id.  See* Super. Ct. Crim. R. 61(d)(4).  This procedural provision, too, may be applied on a claim-by-claim basis.  *See State v. Cooper*, 2001 WL 1729147, at *2 (applying Rule 61's summary

-15-

## B. INEFFECTIVE ASSISTANCE CLAIMS AGAINST APPELLATE COUNSEL

(26) A claim of ineffective assistance of appellate counsel is reviewed under the familiar two-part *Strickland* test.[45] One claiming ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[46] When claiming ineffective assistance of appellate counsel, one "must show a reasonable probability that, but for his counsel's unreasonable failure to [press a particular claim], he would have prevailed on his appeal."[47]

(27) Now, "[t]he likelihood of [that] different result must be substantial, not just conceivable."[48] And while the "objective inquiry is not mathematically precise," there can only be a finding of the required prejudice "when there is a substantial

---

dismissal provision to two of the movant's claimed errors—one a direct claim, one an ineffectiveness claim—where each was stated in a conclusory manner and offered no specifics to support his mere assertions); *id.* ("Claims for postconviction relief, which are entirely conclusory may be summarily dismissed on that basis.").

[45] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

[46] *Strickland*, 466 U.S. at 694; *see also Alston v. State*, 2015 WL 5297709, at *2-3 (Del. Sept. 4, 2015).

[47] *Neal*, 80 A.3d at 947 (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

[48] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)); *see Strickland*, 466 U.S. at 693 ("It is not enough for the [postconviction movant] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (citation omitted)).

likelihood—*i.e.*, a meaningful chance—that a different outcome would have occurred but for counsel's deficient performance."[49]

(28) So, at some point for a movant to be successful under *Strickland*, the Court "must consider the totality of the evidence, and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors" he alleges counsel made.[50] This measure of prejudice is the same whether the ineffectiveness charge is aimed at trial or direct appeal counsel.[51] A movant must prove **both** deficient attorney performance **and** resulting prejudice to succeed in making an ineffective assistance of counsel claim. Failure in the first instance to prove either will doom his claim, and the Court need not address the other.[52] Put another way, "if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone."[53]

---

[49] *Baynum v. State*, 211 A.3d 1075, 1084 (Del. 2019) (citing *Harrington*, 562 U.S. at 112).

[50] *Dale v. State*, 2017 WL 443705, at *2 (Del. Jan. 31, 2017) (cleaned up).

[51] *See Neal*, 80 A.3d at 946 ("When evaluating an appellate counsel's conduct for ineffective assistance, we apply the same *Strickland* framework."); *Ploof v. State*, 75 A.3d 811, 831 (Del. 2013) ("Although the United States Supreme Court developed the *Strickland* test to evaluate trial counsel, we also apply the *Strickland* test to evaluate appellate counsel's performance.").

[52] *Strickland*, 466 U.S. at 697; *Ploof*, 75 A.3d at 825 ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant" (citation omitted)); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[53] *State v. Manley*, 2014 WL 2621317, at *7 (Del. Super. Ct. May 29, 2014); *Green v. State*, 238 A.3d 160, 174-75 (Del. 2020) ("We may dispose of an ineffective-assistance claim based on the absence of sufficient prejudice without addressing the performance prong if, in fact prejudice

(29)   To determine whether Mr. Mayfield has been prejudiced because his attorney failed to raise any specific issue on appeal, the Court begins—and as set forth below can end—its Strickland examination by considering each issue's merits.[54]

**1. Mr. Mayfield's claim that his constitutional right to a fair trial was violated when the Court denied his request to call, as a trial witness, the Justice of the Peace Court magistrate who authorized his arrest warrant would not have gained him reversal of his convictions.**

(30)   Mr. Mayfield says his appellate counsel was ineffective for not challenging this Court's denial of his demand to call the Justice of the Peace Court magistrate who authorized his arrest warrant. Mr. Mayfield sought to subpoena and have the magistrate testify about extant and missing averments in his arrest warrant.[55] Mr. Mayfield seemed to believe that the magistrate may not have signed that arrest warrant had certain information been included.[56] The Court deemed that testimony irrelevant.[57]

(31)   There is no possibility that challenging this evidentiary ruling could have resulted in reversal of Mr. Mayfield's convictions. The Delaware Supreme

---

is lacking."); *Strickland*, 466 U.S. at 691 ("an error by counsel, even if professionally unreasonable, does not warrant setting aside the criminal judgment if the error had no effect").

[54]   *Ploof*, 75 A.3d at 832-33.

[55]   A-519-521; A-621-622.

[56]   A-519-521; A-621-622.

[57]   A-621-622.

Court reviews this Court's rulings on the admissibility of evidence for abuse of discretion.[58] "An abuse of discretion occurs when a court has exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[59] At the point he wished to raise the issue—trial of the substantive charges after indictment—any irregularity in a Justice of Peace arrest warrant was irrelevant.[60] There seems no chance our Supreme Court would have found this Court's relevance ruling to be an abuse of discretion. And as Mr. Mayfield has never articulated any evidence that derived from execution of the alleged deficient arrest warrant or other prejudice he suffered therefrom, there's no possibility of prejudice from a ruling disallowing the testimony he wished to attack or from counsel's failure to argue about it on appeal.[61]

### 2. Failure to challenge the trial judge's questioning of a witness.

(32) Here, Mr. Mayfield suggests that appellate counsel should have challenged the trial judge's questioning of a State's witness. In his view, the Court's

[58] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010) (citing *Baumann v. State*, 891 A.2d 146, 148 (Del. 2005)).

[59] *Id.* (citing *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994)).

[60] *See State v. Eley*, 2002 WL 337996, at *5 (Del Super. Ct. Feb. 19, 2002) (finding defendant could not establish *Strickland*-level prejudice on a similar claim of failure to attack an alleged faulty arrest warrant claim, because once "[t]he Grand Jury found there was probable cause for the charges . . . [a]ny deficiency in the arrest warrant, even assuming there was one, was cured by the indictment.").

[61] *See State v. Spencer*, 2023 WL 3052370, at *6 (Del. Super. Ct. Apr. 24, 2023) (explaining that a court will not provide redress for an alleged Fourth Amendment violation that resulted in no actual discovery of evidence).

questioning hindered his cross-examination of the witness.[62] And so, Mr. Mayfield says, his appellate counsel should have raised this issue on appeal.

(33) Delaware Rule of Evidence 614(b) allows a trial judge to "examine a witness regardless of who calls the witness."[63] And, "there is no general bar preventing trial judges from questioning witnesses, *sua sponte*."[64] That happened in this instance when the Court needed to clarify for itself a point that had become muddled during Mr. Mayfield's cross-examination of the chief investigating officer.[65] Mr. Mayfield did not object to the Court's questions at the time, nor did he follow-up with any additional cross-examination when invited to do so.[66] So, had this issue been raised on direct appeal, the Supreme Court would have reviewed the Court's questioning for plain error.[67] Plain error is a narrower and exacting standard of review:

> the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. . . . Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right,

---

[62] Supp. Mem. in Support of Mot. for Postconviction Relief 2-3.

[63] D.R.E. 614(b).

[64] *Lawrence v. State*, 2007 WL 1329002, at *2 (Del. May 8, 2007).

[65] A-514-519.

[66] A-518-519.

[67] *Lawrence*, 2007 WL 1329002, at *2.

or which clearly shows manifest injustice.[68]

(34)   When a witness doesn't seem to understand questions asked by a party or there is other confusion, a trial judge may "explain to [her] the nature of the answer or information called for" or endeavor to seek clarification for himself as factfinder in a bench trial.[69]  Indeed, Rule 614 was adopted, in part, for just such purpose.[70]   There is no substantial likelihood that our Supreme Court would have found the Court's minimal questioning here to have constituted plain and reversible error.[71]

### 3. Failure to challenge the Court's denial of Mr. Mayfield's mid-trial motion for judgment of acquittal on direct appeal.

(35)   After the State had rested, Mr. Mayfield moved for judgment of acquittal arguing that there was contradictory evidence in the State's case and the Court should therefore "dismiss all charges" against him.[72]  Now, Mr. Mayfield charges that his appellate counsel should have challenged the Court's denial of the

---

[68]   *Trump v. State*, 753 A.2d 963, 971 (Del. 2000), *holding modified by Baker v. State*, 906 A.2d 139 (Del. 2006) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986), *cert. denied*, 479 U.S. 869 (1986)).

[69]   *Lawrence*, 2007 WL 1329002, at *2 (quoting *State v. Garcia*, 673 P.2d 955 960 (Ariz. Ct. App. 1983)); *id.* at *3 ("Attempts by a judge to facilitate a witness' understanding of a question are not improper." (quoting *State v. Robertson*, 760 A.2d 82, 104 (Conn. 2000))).

[70]   D.R.E. 614 cmt. ("The Committee recognized that this rule may be helpful in nonjury trials, especially if a party is appearing *pro se*.").

[71]   *Lawrence*, 2007 WL 1329002, at *3 (holding that because the trial judge's questions and remarks did not prejudicially affect any of the appellant's substantial rights, the judge "committed no error, let alone plain error").

[72]   A-629-630.

motion for judgment of acquittal on the charges from the 2017 episode. According to Mr. Mayfield, he was and is due acquittal on those charges because the victim, C.C., "gave clear and exonerating statements concerning her attacker during her interview" with the police that she later contradicted at trial.[73] To him, with these inconsistencies, the State did not prove his identity as C.C.'s rapist beyond a reasonable doubt and failure to raise that claim on appeal was ineffective.[74]

(36) On appeal, the Delaware Supreme Court "review[s] the Superior Court's denial of a motion for judgment of acquittal *de novo* to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements, beyond a reasonable doubt."[75] But as our Supreme Court has explained, it is only "in the rare case where there is irreconcilable conflict in the State's evidence concerning the defendant's guilt, such as would preclude a conviction beyond a reasonable doubt, [that] the trial court must . . . grant a motion for judgment of acquittal."[76] This is not one of those rare cases,[77] and—

---

[73] Supp. Mem. in Support of Mot. for Postconviction Relief 3-4.

[74] *Id.* at 4.

[75] *Howell v. State*, 268 A.3d 754, 775 (Del. 2011) (citing *Cushner v. State*, 214 A.3d 443, 446 (Del. 2019)).

[76] *Washington v. State*, 4 A.3d 375, 378 (Del. 2010).

[77] *See id.* at 379 (explaining the factors of the "rare case" in which "all of the requirements for an irreconcilable conflict [will] be found" that would mandate grant of a motion for judgment of acquittal).

with the other scientific evidence identifying Mr. Mayfield as C.C.'s attacker[78]—

there is no substantial likelihood that our Supreme Court would reverse this Court's

denial of the motion for judgment of acquittal on the 2017 charges.

## 4. Failure to challenge Mr. Mayfield's waiver of a jury trial.

(37) Mr. Mayfield argues now that his appellate counsel should have

challenged his jury-trial waiver.[79] He insists that the Court "erroneously induced

[him] to accept a bench trial over a jury trial."[80] And in his view, had his appellate

counsel raised this issue, it would have gained reversal of his convictions.

(38) Both the United States and Delaware Constitutions provide a criminal

defendant the right to a jury trial.[81] Indeed, "[t]rial by jury has been established by

the Constitution as the 'normal and . . . preferable mode of disposing of issues of

fact in criminal cases.'"[82] But, it is a right that the defendant may—when he

determines it in his better interest—waive.[83] Whether to accept or deny a criminal

defendant's jury trial waiver is within the trial judge's discretion.[84] On appeal, a

---

[78] *See* A-632 (outlining the scientific and testimonial evidence when denying motion for judgment of acquittal on charges from attack of C.C.).

[79] Supp. Mem. in Support of Mot. for Postconviction Relief 3-4.

[80] Amended Mot. for Postconviction Relief 1.

[81] U.S. CONST. amend. VI; DEL. CONST. art. I, § 7.

[82] *Singer v. United States*, 380 U.S. 24, 35 (1965) (quoting *Patton v. United States*, 281 U.S. 276, 312 (1930)).

[83] *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942); *Davis v. State*, 809 A.2d 565, 568 (Del. 2002).

[84] *Deshields v. State*, 706 A.2d 502, 509 (Del. 1998); *Polk v. State*, 567 A.2d 1290, 1295 (Del.

defendant bears the burden of proving that he did not exercise a valid waiver of his right to trial by jury.[85] And, this Court's decision to accept such waiver is reviewed by this Court for an abuse of discretion.[86]

(39) It is Mr. Mayfield who first mentioned waiver of a jury trial in a pretrial conference.[87] He notified the Court that he would make up his mind about his waiver in one to two weeks.[88] The Court suggested that when making his jury-waiver decision, Mr. Mayfield might want to consult with standby counsel.[89]

(40) At the next status conference, Mr. Mayfield made it clear that he had decided that he wanted to waive trial by jury; the State consented.[90] The Court then carefully and thoroughly conducted the required colloquy with Mr. Mayfield and accepted his written waiver of the right to a jury trial.[91] It was only after this exchange that the Court found that Mr. Mayfield knowingly and voluntarily waived his right to trial by jury.[92]

---

1989).

[85] *Davis*, 809 A.2d at 570 (citing *Adams*, 317 U.S. at 281).

[86] *Id.* at 572 (citing *Deshields*, 706 A.2d at 509).

[87] A-299-300.

[88] A-300-301.

[89] A-319-321.

[90] A-388.

[91] A-388-391; *see Davis*, 809 A.2d at 570-72 (explaining the reasons for and best practices expected of Delaware trial judges in accepting a jury-trial waiver).

[92] A-391.

(41) Mr. Mayfield's suggestion of inappropriate inducement of this waiver is belied by the record. And with the specific claim made by Mr. Mayfield, any misunderstandings that he may have had were adequately cured by the Court's extensive waiver colloquy.[93] Given all that, there is no substantial likelihood that our Supreme Court would have found the Court to have abused its discretion in the acceptance of Mr. Mayfield's waiver of a jury trial—the record establishes that Mr. Mayfield was motivated to waive his right to a trial by jury for reasons of his own.[94]

(42) To reiterate, given the ineffectiveness claims he has brought, Mr. Mayfield was tasked with proving "there is a substantial likelihood—*i.e.*, a meaningful chance—that a different outcome would have occurred but for counsel's deficient performance" on his direct appeal.[95] Mr. Mayfield has failed on each allegation made.[96]

---

[93] *See generally State v. Caulk*, 2021 WL 26622250, at *7-8 (Del. Super. Ct. June 29, 2021); *State v. Hall*, 2016 WL 241192, at *3 (Del. Super. Ct. Jan. 19, 2016).

[94] *See, e.g.*, *Wheeler v. State*, 296 A.3d 363, 375-77 (Del. 2023) (demonstrating that in such case, a defendant's claim of an invalid jury-trial waiver will neither warrant reversal on direct appeal nor meet the required *Strickland* prejudice standard).

[95] *Baynum*, 211 A.3d at 1084 (citing *Harrington*, 562 U.S. at 112).

[96] While Mr. Mayfield's failure to carry his burden on the *Strickland* prejudice showing alone dooms his claim, he would gain no more traction in trying to prove deficient performance by his appellate attorney. The mere fact that a defendant is unsuccessful on direct appeal does little in demonstrating his appellate counsel was ineffective. Appellate counsel need not raise every nonfrivolous issue. *Ploof*, 75 A.3d at 831 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Rather, a postconviction movant "can only show that his appellate counsel ineffectively represented him where the attorney omits issues that are clearly stronger than those the attorney

## V. CONCLUSION

(43) Having reviewed the record carefully, the Court has concluded that Mr. Mayfield's claims are without merit and no other substantial grounds for Rule 61 relief exist.[97]

(44) Accordingly, Mr. Mayfield's Motion for Postconviction Relief is **DENIED** and Mr. Gifford's Motion to Withdraw is **GRANTED**.

**SO ORDERED this 28th day of October, 2024.**

*/s/ Paul R. Wallace*

_____
Paul R. Wallace, Judge

Original to Prothonotary

cc:   Mr. Kili L. Mayfield, *pro se*
      Benjamin S. Gifford, Esquire
      Eric H. Zubrow, Deputy Attorney General
      Jillian L. Schroeder, Deputy Attorney General
      Cathy A. Johnson, Esquire
      Santino Ceccotti, Esquire
      Stephanie J. Volturo, Esquire, Office of Conflicts Counsel (ODS)

---

presented." *Id.* at 832.  Mr. Mayfield has made no such showing.

[97]   Del. Super. Ct. Crim. R. 61(e)(7); *Lindsey*, 2023 WL 2535895, at *5.